GILCREASE v. GILCREASE.

*98 P. 2d 906.*

No. 27704.   Dec. 12, 1939.

Rehearing Denied Jan. 16, 1940.

Application for Leave to File Second Petition for Rehearing Denied Feb. 13, 1940.

Duff & Manatt, of Tulsa, for plaintiff in error.

Chas. L. Yancey, G. C. Spillers, and E. M. Calkin, all of Tulsa, for defendant in error.

WELCH, V. C. J. Essential facts are that in a former action between the parties, who were husband and wife, the trial court judgment granted the husband a divorce and awarded alimony to the wife in the sum of $15,000, payable in equal monthly installments of $250. That judgment was approved and affirmed on appeal. Gilcrease v. Gilcrease, 176 Okla. 237, 54 P. 2d 1056.

After the husband had made the monthly payments for some time, he filed his application to modify the former judgment by vacating the same as to future installments and for discontinuance of the monthly payments on account of the remarriage of his former wife to another man. The trial court, upon consideration of the husband's application, and of the evidence, denied the application for modification of the former judgment, from which denial this appeal is prosecuted.

At the outset we meet the question whether such an alimony judgment is a final judgment, or whether there is a continued right in the husband to have modification upon a change of condition of the wife.

The exact question appears not to have been presented before, but we have held that in such case, that is, in case of divorce granted to the husband upon fault of the wife, that in proper circumstances, the trial court may award permanent alimony in a reasonable amount to the wife. Elmore v. Elmore, 117 Okla. 63, 244 P. 788; Newman v. Newman, 144 Okla. 160, 290 P. 179; Flaxman v. Flaxman, 169 Okla. 65, 35 P. 2d 950, and Flaxman v. Flaxman, 177 Okla. 28, 57 P. 2d 819.

Under our statutes permanent alimony must be awarded either in specific property or in a definite sum of money. Section 672, O. S. 1931, 12 Okla. St. Ann. § 1278; West v. West, 134 Okla. 226, 273 P. 209; Oder v. Oder, 149 Okla. 63, 299 P. 202; Flaxman v. Flaxman, 169 Okla. 65, 35 P. 2d 950; Dutton v. Dutton, 97 Okla. 234, 223 P. 149, and Javine v. Javine, 134 Okla. 283, 273 P. 267.

And in Flaxman v. Flaxman, 169 Okla. 65, 35 P. 2d 950, we applied this same rule to the awarding of alimony to the wife where the divorce was granted on her fault. And in the second appeal between the same parties, 177 Okla. 28, 57 P. 2d 819, we treated the alimony award to the wife at fault, in a lump sum, as being in all respects a final judgment.

And so far as indicated by the briefs of the parties or our independent research, this court has always treated a judgment for alimony as being capable of attaining definite finality, the same as any other judgment. Privett v. Privett, 93 Okla. 171, 220 P. 348; Davis v. Davis, 61 Okla. 275, 161 P. 190; Finley v. Finley, 174 Okla. 457, 50 P. 2d 643; Friedman v. Friedman, 132 Okla. 45, 269 P. 257, and Hatfield v. Hatfield, 59 Okla. 132, 158 P. 942.

It is true these last-cited cases deal with judgments for alimony to the wife where the husband was at fault. But since we otherwise apply the identical test and rule to a judgment for alimony

granted the wife where the divorce was granted to the husband, as we did in the Flaxman Case, and since in this case the rule was followed in granting the alimony here involved in a fixed sum, we see no reason why we should not apply to such an alimony judgment all of the other rules applicable, including these fixed rules of finality thereof.

Our attention is directed to the fact that in the former action the trial court first announced an award of $72,000 in alimony payable $200 per month so long as the wife remained unmarried, to terminate, however, upon her remarriage, but that in the further course of rendition of the judgment the alimony portion thereof was changed, and instead of such award the alimony award was made in the sum of $15,000, payable $250 per month, with complete elimination of any reference to remarriage of the wife or cessation of payments on account of her remarriage. We deem that not of controlling importance in view of our conclusion that the judgment for $15,000 in alimony attained the same complete finality as any other judgment rendered in the district court. This detail in the rendition of the alimony judgment in the former action was noticed in our opinion in Gilcrease v. Gilcrease, 176 Okla. 237, 54 P. 2d 1056. It is here urged that the first pronouncement of $72,000 alimony in monthly payments to terminate on remarriage was eliminated, and in lieu thereof there was substituted the judgment for $15,000 alimony in monthly payments not to terminate on remarriage of the wife, and that the husband acquiesced therein by not appealing therefrom, and that therefore he should not be heard to seek termination of the monthly payments upon her remarriage. But we deem that of no controlling importance, since we conclude that he has no right to modify the alimony judgment on this ground, on account of the legal finality thereof.

We conclude that each judgment for alimony to the wife upon the granting of a divorce should be measured by the same rules as to finality, and that in no case does the husband have a right to modification of an alimony judgment, after the same has become final, on account of the remarriage of his wife to another man.

In Bowen v. Bowen, 182 Okla. 114, 76 P. 2d 900, alimony was granted the wife in a fixed sum payable in equal monthly installments. This court held such alimony award not subject to modification upon marriage of wife to another man.

In other jurisdictions, where an alimony award to the wife in money is not required to be made in a fixed sum, but may be made in monthly payments to run indefinitely in the future, it has been held that change in condition or status of the wife, such as remarriage to another, will justify modification of the decree. Such decisions are here presented and discussed in the briefs of the parties. However, in view of the different rule in this state as to the rendition and form of an alimony judgment, those decisions are not in point, as we analyze the former decisions of this court, and as our former decisions construe our applicable statutes.

Following our former decisions, as we analyze them, the judgment of the trial court denying the husband's application for modification of this final alimony judgment is affirmed.

OSBORN, CORN, DAVISON, and HURST, JJ., concur. BAYLESS, C. J., and RILEY, GIBSON, and DANNER, JJ., dissenting.

———

GIBSON, J. (dissenting). Admittedly here the award to the wife was not in any sense a settlement of property rights, and the divorce decree was granted the husband because of the fault of the wife. I agree that the exact question has not been presented heretofore, and for that reason, among others, I fail to see that the case of Flaxman v. Flaxman, 177 Okla. 28, 57 P. 2d 819, furnishes a rule by which the question should be decided. In fact the Flaxman Case, in discussing the former opinion in the same case, states:

"In other words, we extended a rule arising from the particular wording of our alimony statute, and therefore applicable to alimony granted under the statute, to a judgment for alimony granted independent of the statute. The propriety of such extended application of the rule was not discussed in our former opinion."

Whether the rule of former cases with respect to awards made under the statute should be modified does not at this time concern us, for the alimony, so called, awarded here was not allowed under the statute. It was awarded under the equity powers of the court.

Divorce cases in Oklahoma are of purely equitable cognizance. Hayes v. Hayes, 178 Okla. 206, 62 P. 2d 62; Bussey v. Bussey, 148 Okla. 10, 296 P. 401; Newberry v. Newberry, 147 Okla. 249, 296 P. 202; McCurdy v. McCurdy, 123 Okla. 295, 253 P. 295. And the award made by the court to an erring wife, when not a property settlement, is an exercise of the equity powers of the court to give the erring wife alimony, "not as a reward for her infidelity, but in order that she might not be left destitute" —"or a charge upon society." Pauly v. Pauly, 14 Okla. 1, 76 P. 148; Newman v. Newman, 144 Okla. 160, 290 P. 179.

With these fundamental differences in the nature of the award given in a case such as this and in other cases where the award is based on statute, it is difficult to see why the rules interpreting the statute should be applied rather than the rules of equity governing cases of this kind.

Bishop, in his work on Marriage, Divorce and Separation, vol. 2, section 867, says:

"A court having equity powers, and probably any divorce court, may in a clear case require the husband to make some provision for his guilty wife, as the condition on which it will furnish the redress he prays."

And at section 484, Marriage and Divorce:

"If she * * * does what is in the highest degree commendable by becoming a wife to a second husband, receiving her support from him, this further alimony may likewise be with propriety discontinued."

It is apparent, also, that the case of Bowen v. Bowen, 182 Okla. 114, 76 P. 2d 900, cited in the majority opinion, does not control here, since the award there was made to the wife in the decree against the husband and was in the nature of a settlement of property rights.

That the court in awarding alimony in this case had in mind that the wife was not entitled as of right to alimony, but only as a matter of discretion under the equity powers of the court, is plainly suggested by the wording of the decree. The court found that "only such payments should be made her, by way of permanent alimony, as are necessary during a reasonable period for her to readjust her life." The decree is open to the construction that the court intended the "payments" to continue only until that readjustment had been accomplished, and at all events not beyond the time when the payments would equal the total amount fixed. Her marriage to a husband amply able to support her has fully brought about the readjustment. The reason for further payments certainly disappeared at that time, unless the nature of the award is so fixed as to be a reason.

Considered as a decree of a court of equity in relation to the question, "Should it be longer enforced?" old principles of equity aid in the answer to the question. Courts of equity have a continuing power to enforce their decrees, not dependent entirely on issuance of a writ of execution. Duff v. Combs (Ky.) 8 B. Mon. 386. A court of equity always has the power and judicial discretion to refuse to compel inequity, and if a change of condition has brought a situation where it would be inequitable longer to enforce the decree, the defendant may be given relief. The question presented is not whether the decree was right in the first instance, but whether it is now equitable to enforce it. See Terry v. McClintock (Mich.) 2 N. W.

787; St. Louis, K. C. & C. R. Co. v. Wabash R. Co. (8th C.C.A.) 152 Fed. 849.

It is immaterial whether the defendant awaits an application to enforce the decree against him, or, himself, comes into court with a motion to seek the relief. As was said in the case of Francis v. Francis (Mo. App.) 179 S. W. 975:

"* * * We generally reach these judgments in divorce proceedings—when it is sought to change them as to alimony and the custody of children, by motion, not by bill of review. * * *"

In the case of Emerson v. Emerson (Md.) 87 Atl. 1033, the Supreme Court of Maryland, as stated in the opinion, had before it these questions:

"Has a court of equity in Maryland the power to modify, alter, or rescind a final decree, founded upon a bill of absolute divorce, where there are no reservations, after it has become enrolled? If so, does the remarriage present such a case for its modification or rescission?"

The court quoted extensively from Alexander v. Alexander (D. C.) 13 App. D. C. 334, 45 L.R.A. 806. Pertinent portions of the quotation are as follows:

" 'It is conceded on the part of the appellant, that upon good cause shown of inability on the part of the husband to pay the alimony, the court might order a suspension of payment, and would not, or rather should not, punish him as for contempt of court. But it seems to us that this concession virtually concedes the whole case. If the decree for the allowance of alimony is of the rigid, inflexible, and unchangeable character claimed for it in the bill of review now before us, it is not apparent how it can be suspended any more than it can be modified by a reduction of the amount. Suspension is just as much an alteration of the decree as is reduction of the amount. * * * If there is a power in the court to suspend the payment of alimony, there is undoubtedly a power to reduce the amount. The one can be inferred from the statute as well as the other. * * * In proceedings for divorce the jurisdiction of the court is in some things necessarily continuous. * * * The *enforcement of the payment of alimony implies a continuous jurisdiction.*' " (Emphasis ours.)

The court said further:

"We are of the opinion that the better reasoning leads irresistibly to the conclusion that, in states where alimony is regarded as a maintenance for the wife's support out of the income of the husband and not a division of property, the jurisdiction exists in the courts of equity to modify that part of the decree providing for alimony whether the decree grants divorce a vinculo or a mensa.

"Now, does the remarriage of the wife present such a circumstance as should cause a court of equity to modify that part of a decree providing for alimony? Should it be entirely rescinded or only modified? The authorities are almost unanimous that in event of remarriage the decree should be modified; but there is a wide difference between them as to the absolute annulment of the alimony provision. * * *

"Altogether the better reasoning leads to the conclusion that, as a general rule, as the new husband is obliged to give entire support, therefore, the former husband is to be thus relieved. But there may exist facts and conditions that would induce the court to withhold this relief."

In the case of Olney v. Watts (Ohio) 3 N. E. 354, on a petition to modify a former decree as to alimony on account of the remarriage of the wife, the court said that the question involved was the right and duty of the court to review, modify, or vacate a former decree granting alimony payable in installments, when such power had not been reserved in the decree. The court held that, unless it appeared that the installments were in the nature of a *permanent division* of the husband's property, relief should be granted.

And in the case of Francis v. Francis, supra, the court said:

"In those jurisdictions in which actions for divorce are heard on the equity side of the court as cases in chancery or as formerly by the ecclesiastical courts of England, the right of the court to alter the order for alimony has been recognized and exercised in very many cases.

"* * * A leading case in which the

judgment was rendered by Dr. Lushington, in the ecclesiastical court of England, is that of De Blaquiere v. De Blaquiere, 3 Haggard's Ecc. Rep. 322. In that case the right of the court to remit past due and unpaid alimony was exercised as an undoubted right. There both parties had long abstained from applying to the court for a change of the alimony first awarded, the husband, who had been divorced a mensa et thoro on account of his adultery, applying for a reduction of alimony allowed but largely in arrears, the wife on the other hand then applying to enforce its payment. The court held that it would not enforce the arrears nor inquire as to the sums paid by the husband for his wife's debts incurred by reason of nonpayment of that alimony, nor would it reduce alimony on account of an express waiver of a part thereof by the wife. The decree of separation was entered in May, 1820. From that time until his application for the reduction of the amount allowed and for the greater part of which he was in arrears, the husband had not filed any application for the reduction until February, 1829. The court held that it was open to the wife to have made the application to enforce payment of the allowance at any time during the interval and as she had failed to do so until her husband had taken steps to have the amount reduced, it affirmed the decree for the amount of alimony allowed but declined to enforce payment of that part of it due prior to the commencing of the last quarter of the time in which the proceedings for its alteration had been filed. That is to say, the court, long after the alimony had been fixed, remitted the payment of all of it in arrears, except for the one year commencing with the quarter preceding the application to the court."

The accrued alimony referred to in Dr. Lushington's decision was not less fixed than the amount in this case. Further, it appears in that case that the application was made by the husband before the wife asked for enforcement.

Here it appears beyond question that the new husband of the wife is amply able to support and is supporting her in luxury. The condition is such as to appeal to a court of equity. There is no reason why the decree should be further enforced. Nor is there any reason why the divorced husband should be required to wait until his divorced wife requests the court to enforce the judgment before he applies for relief. He has precedent in the English and American cases cited. His position is supported by principles of equity and justice.

The wife's remarriage to another who was supporting her in luxury afforded a cogent reason for the court to vacate or modify the decree. 19 C. J. 275, sec. 626. The reason for the rule is obvious.

"Good public policy would not compel a divorced husband to support his former wife after she has become another man's wife, except under extraordinary conditions, which she should be required to prove." Cohen v. Cohen, 150 Cal. 99, 88 P. 267, 270, 11 Am. Cas. 520.

The proof here shows that the wife had readjusted her life, and did not need support from her former husband.

I, therefore, dissent.

I am authorized to say that Mr. Chief Justice BAYLESS and Justices RILEY and DANNER concur in the views herein expressed.